# CASES IN CHANCERY.

## DELAWARE.

J. Alexander Fulton

*vs.*

The Town of Dover *et al.*

Kent, March T. 1886.

*Dedication of land for streets ; condemnation of land for streets in Dover ; procedure.*

1. Where the proprietor of land lays out the same into building lots, with streets and alleys between them, and makes and records a plot thereof, he thereby dedicates such streets and alleys to public use; and both the lot holders and the citizens generally are entitled to use the same.

2. And where such lots are afterwards included in an old and adjoining town by extending the corporate limits thereof, no proceedings by the corporate authority for the condemnation of any of said streets are necessary; they are already public streets by the prior dedication.

3. An Act of Assembly required that upon the condemnation of any real estate for the purpose of a street, immediate notice thereof should be given the owner of the land so to be taken. In pursuance of this legislative authority, the town council of the town of Dover passed a resolution of condemnation, December 7, 1885, but the owner was not notified until March 26, 1886. *Held:*

1

(*a*) That the notice came too late.

(*b*) That the resolution of condemnation was ineffectual in consequence thereof.

(*c*) That the town council should be enjoined from executing it.

4. Statutes appropriating private property to public use must be strictly pursued.

BILL FOR AN INJUNCTION.—The bill seeks to restrain the Town of Dover from further action in its proceeding to take land belonging to complainant for the purpose of extending Queen street from Cecil street to Clara street. The facts are sufficiently stated in the opinion.

The following is a portion of the map referred to in the opinion, showing the location of the land in question :

*J. Alexander Fulton,* complainant, *pro se :*

The assessment of damages is a judicial act, involving

consideration, discrimination, and judgment; and, even had the town council been a competent tribunal to pass upon the question, it was necessary that all the members should be present and act, and the attempt of a less number to assess them was void. 13 Encyclopedia Britannica, 762; Act Feb. 27, 1879, §§ 7, 8, 16; *Croker* v. *Crane,* 21 Wend. 211; *Rice* v. *Danville etc. Turnpike Road Co.* 7 Dana, 81; 1 Jac. Law Dict. 194.

The land cannot be taken without compensation. This must be ascertained in a lawful way. There must be a hearing, or opportunity to be heard, before a fair and impartial tribunal. If the Act of February 27, 1879, attempts to authorize a seizure without securing this, it is void. Eng. Stat. 5 Edw. III., chap. 9; 25 Edw. III., chap. 4; 28 Edw. III., chap. 3, as cited in 4 Jac. Law Dict. 154, 208, 209; 1 Bl. Com. 139; U. S. Const. arts. 5, 14; Del. Const. Preamble, art. 1, § 8, conclusion art. 1; *Stuart* v. *Palmer,* 74 N. Y. 183; *Adams* v. *Saratoga & W. R. Co.* 10 N. Y. 333; *Curran* v. *Shattuck,* 24 Cal. 432; *Jordan* v. *Hyatt,* 3 Barb. 275; *People* v. *Tallman,* 36 Barb. 222; *Mulligan* v. *Smith,* 59 Cal. 206; *Com.* v. *Coombs,* 4 Mass. 489; *Powers* v. *Bears,* 12 Wis. 214; *Kramer* v. *Cleveland & P. R. Co.* 5 Ohio St. 140; *Vail* v. *Morris & E. R. Co.* 1 Zab. 189.

The petition of citizens for the opening of Queen street presented to council, December 15, 1884, the resolutions of council adopted December 7, 1885, and the notice to complainant dated March 25, 1886, and served on the next day, cannot be connected and treated as one continuous proceeding; but the long delay to proceed under the petition, and also, under the resolutions, was an abandonment thereof. Act February 27, 1879, §§ 7, 8; *Bensley* v. *Mountain Lake Water Co.* 13 Cal. 306.

The compensation must be adequate and in money. Speculative compensation, as the supposed enhanced

value of the adjacent land, is not the compensation meant by the Constitution. *Eward* v. *Lawrenceburgh & Up. M. R. Co.* 7 Ind. 711; *Bigelow* v. *W. Wisconsin R. Co.* 27 Wis. 478; *Carson* v. *Coleman*, 3 Stockt. 106; *Rice* v. *Danville etc. Turnpike Road Co.* 7 Dana, 81; *Louisville & N. R. Co.* v. *Glazebrook*, 1 Bush, 325; *Sater* v. *Burlington*, 1 Iowa, 386; *Carpenter* v. *Landaff*, 42 N. H. 218; *Roberts* v. *Brown Co. Comrs.* 21 Kan. 247; *Winona etc. R. Co.* v. *Denman*, 10 Minn. 267; *Sacramento Valley R. Co.* v. *Moffatt*, 6 Cal. 74.

There must be a survey, and the proceedings were void for want of it. *O'Hara* v. *Pennsylvania R. Co.* 25 Pa. 445; *Rice* v. *Danville etc. Turnpike Road Co.* 7 Dana, 81, 86; *Vail* v. *Morris & E. R. Co.* 1 Zab. 190.

No legal right was waived by giving notice of dissatisfaction at assessment of damages and notice of appeal. *Cincinnati* v. *Coombs*, 16 Ohio, 181; *Unangst's App.* 55 Pa. 128; *O'Hara* v. *Pennsylvania R. Co. supra.*

Every Act of Assembly in derogation of the common law; and every Act establishing a special tribunal or conferring special power must be strictly construed. *Watson* v. *Acquackanonck Water Co.* 7 Vroom, 195; *Harbeck* v. *Toledo*, 11 Ohio St. 219; *Mitchell* v. *Kirtland*, 7 Conn. 229; *Shaffner* v. *St. Louis*, 31 Mo. 264; *Leslie* v. *St. Louis*, 47 Mo. 474; *Gilmer* v. *Lime Point*, 19 Cal. 47; *Stanford* v. *Worn*, 27 Cal. 171; *Curran* v. *Shattuck*, 24 Cal. 427; *Adams* v. *Saratoga & W. R. Co.* 10 N. Y. 328; *Halstead* v. *New York*, 3 N. Y. 430.

An injunction is the proper remedy. *Leslie* v. *St. Louis*, 47 Mo. 474; *Moorhead* v. *Little Miami R. Co.* 17 Ohio, 340; *Unangst's App.* 55 Pa. 128; *Harness* v. *Chesapeake etc. R. Co.* 1 Md. Ch. 248; *Powers* v. *Bears*, 12 Wis. 214; *Curran* v. *Shattuck*, 24 Cal. 427.

There was no dedication of any part of Queen street north of Cecil. There was no intention to dedicate it.

It never was opened or used by any one but the complainant, and up to the present time remains, as it was in 1877, a part of his pear orchard. At the time of the pretended dedication it was outside the town limits. It never was accepted as a highway. The town by its own proceedings, such as they were, acknowledged that it was private property, and never pretended otherwise until this injunction was granted. *Williams* v. *New York & N. H. R.* 39 Conn. 509; *Hall* v. *Meriden*, 48 Conn. 416; *Hayden* v. *Stone*, 112 Mass. 346; *Steele* v. *Sullivan*, 70 Ala. 589; *Hawley* v. *Baltimore*, 33 Md. 270; *Hall* v. *Baltimore*, 56 Md. 187; *Peoria* v. *Johnston*, 56 Ill. 45; *Harding* v. *Hale*, 61 Ill. 192; *Forbes* v. *Balenseifer*, 74 Ill. 183; *Booraem* v. *North Hudson County R. Co.* 12 Stew. Eq. 465; *White* v. *Bradley*, 66 Me. 254; *Ramthun* v. *Halfman*, 58 Tex. 551; *Ogle* v. *Philadelphia etc. R. Co.* 3 Houst. 267; *State* v. *Atherton*, 16 N. H. 203; *Bissell* v. *New York Cent. R. Co.* 26 Barb. 630; *Witter* v. *Harvey*, 1 McCord, \*67; *State* v. *Nudd*, 23 N. H. 327; *Remington* v. *Millerd*, 1 R. I. 93; *Cemetery Asso.* v. *Meninger*, 14 Kan. 312.

*James Pennewill* and *C. H. B. Day*, for the defendants:

The power and authority of the town council to locate, lay out, and open streets, is given by 16 Del. Laws, chap. 107, §§ 7, 8.

All the proceedings of the town council in respect to the opening of Queen street through the land of complainant were in conformity with the requirements of sections 7, 8, of said chapter 107, vol. 16, Laws of Delaware, and the notice prescribed by said section 8, to be given in writing to the owner or owners of the real estate through or over which the street might pass was given to said complainant in due time. *Re Opening Furman*

*Street,* 17 Wend. 649; *Re Pittsburgh,* 2 Watts & S. 320; *Easton* v. *Walter* (Pa.) 2 Cent. Rep. 589; *Grace* v. *Newton Health Board,* 135 Mass. 490; *Baltimore* v. *Bouldin,* 23 Md. 370.

The State, having the right of eminent domain in all the lands of its citizens, may assert this paramount title, and devest private property for public use, making just compensation therefor. The State may exercise this right through private corporations or individuals as well as by its more direct agents. The Legislature is to judge of the propriety and necessity of devesting private property for public purposes; and it may provide the mode of assessing the compensation. In assessing compensation the advantage or injury resulting to the owner of the lands from the laying out of the street may be considered. The intrinsic value of the land taken is not the true rule of damages. 2 Dill. Mun. Corp. §§ 602, 615, 616; *Dunlap* v. *Mount Sterling,* 14 Ill. 251; *Curry* v. *Mount Sterling,* 15 Ill. 320; *Dorgan* v. *Boston,* 12 Allen, 223; *Baltimore* v. *Bouldin,* 23 Md. 328; *People* v. *Smith,* 21 N. Y. 598; *People* v. *Brooklyn,* 4 N. Y. 419; *Beekman* v. *Saratoga & S. R. Co.* 3 Paige, 45; *Alexander* v. *Baltimore,* 5 Gill, 383; *Livingston* v. *New York,* 8 Wend. 101; *Indianapolis Water Works Co.* v. *Burkhart,* 41 Ind. 364; *Whiteman* v. *Wilmington & S. R. Co.* 2 Harrington, 514.

The authority conferred upon the town council to lay out streets, and the proceedings had under the act of the Legislature, is " due process of law." The legislative Act is itself due process of law. *People* v. *Smith,* 21 N. Y. 595; *Murray* v. *Hoboken Land & Imp. Co.* 59 U. S. 18 How. 272, 15 L. ed. 372; *Columbia Bank* v. *Okely,* 17 U. S. 4 Wheat. 235, 4 L. ed. 559; *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. ed. 616; *Baltimore* v. *Bouldin* and *People* v. *Brooklyn, supra; Stuart* v.

*Palmer*, 74 N. Y. 190; *Owners of Ground* v. *Albany*, 15 Wend. 374; *Livingston* v. *New York*, 8 Wend. 100.

A majority of the town council is all that is required to constitute a quorum for the transaction of any business. Del. Laws, vol. 16, chap. 107, § 16; *Cupp* v. *Seneca County*, 19 Ohio St. 173.

A court of equity will not interfere where there is an adequate remedy at law, or where the party did not seek to vindicate his rights in the proper place and in due time. *Stevens* v. *Beekman*, 1 Johns. Ch. 318; *Jerome* v. *Ross*, 7 Johns. Ch. 315; *People* v. *Brooklyn*, 4 N. Y. 442; *Columbia Bank* v. *Okely*, 17 U. S. 4 Wheat. 242, 4 L. ed. 561; *Gott* v. *Carr*, 6 Gill & J. 311; *Stuart* v. *Baltimore*, 7 Md. 514; *Methodist Prot. Church* v. *Baltimore*, 6 Gill, 891; *LeRoy* v. *New York*, 4 Johns. Ch. 352.

Where the owner of a tract of land has laid the same out in lots, and has made a map or plot thereof and recorded the same, and has also made sales of the lots to various purchasers with reference in the deeds of conveyance to such map or plot, the conveyances, taken in connection with the map or plot to which they refer, operate as a conclusive grant or covenant, securing to the purchasers and to the town all the advantages, privileges, and easements to the lots of the town; and the town has a right at any time to open the streets without condemnation proceedings. And when the town in which the tract of land so laid out is not incorporated, or when the tract of land is not in the town limits at the time it is so laid out, as soon as the town becomes incorporated, or such tract of land so laid out is included within the incorporated limits, the streets, lanes, and alleys, and public grounds become vested in the town, and are under the control, government, and management of the town authorities. *Cincinnati* v. *White*, 31 U. S. 6 Pet. 431, 8

L. ed. 452; *Barclay* v. *Howell*, 31 U. S. 6 Pet. 504,
8 L. ed. 479; *Baltimore* v. *Bouldin*, 23 Md. 372; *White*
v. *Flannigain*, 1 Md. 525; *Livingston* v. *New York*, 8
Wend. 85; *Watertown* v. *Cowen*, 4 Paige, 510; *Rowan*
v. *Portland*, 8 B. Mon. 232; *Hoboken M. E. Church* v.
*Hoboken*, 4 Vroom, 13.

THE CHANCELLOR.—In 1879, J. Alexander Fulton, the
complainant, being the owner of a tract of land adjoining
the town of Dover and immediately north and west
thereof, caused the same to be surveyed as an addition
thereto. He caused the map of the same to be made and
recorded in the recorder's office of Kent County, in
which streets and alleys running north and south, east
and west, are described and located. Of these streets,
Division, Fulton, Cecil, Mary, and Clara are described as
extending from State street to the Delaware Railroad and
beyond, and running east and west. Bradford street,
Governor avenue, New, Queen, Kirkwood and West
streets are described on the map as running north and
south. The streets run at right angles, and are all
described as sixty feet wide.

Upon the map, recorded as aforesaid, there is indorsed
a note in the following words: "All the streets are
sixty feet wide. All the alleys twelve feet, except the
one between State and Bradford streets, which is fifteen
feet wide. The streets running east and west run at
right angles with State street. New and Queen streets
terminate in Mary street, on the north. Kirkwood and
West in Cecil street on the north. All the streets west
of the Delaware Railroad terminate in Mary street, on
the north. The lines appearing on the plot north of
Mary street and west of the railroad were never marked
on the ground, and were merely experimental and pros-
pective."

Mr. Fulton, according to this plan delineated on the map, sold lots, amounting somewhere to near 100 in number, to different persons, many of which have been built upon as places of residence or business, chiefly the former. Fulton's addition has been included within the limits of the town of Dover; the deeds from him to the purchasers of lots all have referred to the recorded plot or map.

By Act of the General Assembly entitled, "An Act to Incorporate the Town of Dover," (Act of February 27, 1879, 16 Del. Laws, p. 140), it is provided in the seventh section thereof that "the town council shall have power, upon the application of ten or more citizens of the town, by petition for the purpose, to locate, lay out, and open or widen any new street or streets, lane or lanes, or alley or alleys, or widen any street, lane, or alley, heretofore laid out or hereafter to be laid out in said town, or reopen any old street or streets, lane or lanes, or alley or alleys now closed, or which may hereafter be closed, which ten or more citizens may desire to be located, laid out, and opened, or widened, or reopened, allowing to the persons, respectively, through or over whose lands such street or streets, lane or lanes, or alley or alleys may pass, such compensation therefor as they shall deem just and reasonable under all circumstances; which compensation, if any be allowed, shall be paid by the treasurer of the town out of the moneys of said town, upon warrants drawn upon him by order of the council aforesaid."

By the eighth section of said Act it is, among other things, provided that "whenever the town council shall have determined to locate and lay out or widen any street, lane, or alley, and shall have fixed the compensation therefor, it shall be their duty, immediately after the survey and location of the said street, lane, or alley, to notify, in writing, the owner or owners of the real estate,

through or over which such street, lane, or alley may run, of their determination to open and widen the same, and to furnish a general description of the location thereof, and also the amount of the damages or compensation allowed to each; and if such owner be not resident within the said town, to notify the holder or tenant of said real estate; but if there be no holder or tenant resident in said town, the said notice may be affixed to any part of the premises."

It seems that the petition of Thomas R. Taylor and twenty-six other citizens of the town of Dover was presented to the town council on the 15th day of December, 1884, requesting the said town council to locate, lay out, and open a new street through the land of said J. Alexander Fulton, from where Queen street now terminates in Cecil street, making the same a continuation of said Queen street to Clara street; and that said petition was received, and referred to the committee on streets.

No public action was taken in respect to the opening of Queen street until the 7th day of December, 1885, when the report of the street committee, in relation to the opening of said street, was taken up for consideration, and the following resolves were adopted:

"*Resolved*, that Queen street be opened and extended from Cecil street to Clara street, of the width of 60 feet, taking into said street 60 feet front on Cecil street (the said front being on the direct line of Queen street as now opened), and running from thence, the same width, to Clara street, to a point where the road, surveyed and laid out under chapter 544 of volume 17 of the Laws of Delaware, ends on said Clara street (the centre of said Queen street as extended being the centre of the said road at its termination on said street), of the lands of J. Alexander Fulton; and that said J. Alexander Fulton be allowed the sum of six cents as damages; and that said sum be paid to said Fulton.

"*Resolved,* that the committee on streets be instructed to have the said street, as extended, surveyed and laid out as one of the public streets of the town; and that the same, when so laid out, is hereby declared to be a public street of the town of Dover, of the width of 60 feet."

The report of the street committee was made to the town council on the 3d day of February, 1885; and no action was taken by the council in respect to it until said 7th day of December, 1885. No notice of the condemnation proceedings by the town council was given to Fulton until the 26th day of March, 1886, when such notice was given in the following words:

Dover, Del., March 25, 1886.

Mr. J. ALEXANDER FULTON:

You are hereby notified that the town council of the town of Dover, at its regular meeting on the 7th day of December, A. D. 1885, did resolve to open Queen street from Cecil street to Clara street, of the width of 60 feet; and that they have condemned 60 feet front and 1,260 feet deep of land belonging to you; and that the said council has allowed to you, as damages, the sum of six cents.

A. S. KIRK, *Clerk of Council.*

From these proceedings of the council, Fulton appealed; but, from not having done so in time or from other cause, withdrew it, and has filed his bill in this court praying an injunction against the corporation from further action, under their proceedings, in the taking of his land and the opening of Queen street.

Upon the above state of facts, I am of the opinion, first, that there was no necessity of any condemnation proceedings, by the town council, of that portion of Queen street lying between Cecil and Mary streets. It had already been dedicated to public use by Mr. Fulton,

by the survey and map hereinbefore referred to, and by
the sale of lots to the different purchasers from him, and
conveyance of said lots by him to the purchasers, in
which the map, which he caused to be made and recorded
with the streets thereon particularly described, is dis-
tinctly referred to.

This map, as remarked by the court in the case of
*Rowan* v. *Portland*, 8 B. Mon. 235 (a case very similar
in every respect to this), is to be assumed as the repre-
sentation of the town in which the lots were sold; and
not as a merely verbal, but as a written and recorded,
representation of its localities and divisions, its streets
and alleys, so far as they are indicated by it. In all
these respects it is to be regarded as having entered into
and formed a part of every contract for the sale of a lot
in the town, by its number or position in the plan, and
as having been adopted and confirmed by every convey-
ance of a lot described by similar reference. It is, in
fact, identified with the town itself; and every reference
to or recognition of the town is a recognition of the plan
by which its various divisions, and the localities and uses
of its different parts, are identified. Every purchaser of
a lot, according to the plan, acquired an interest in it;
not only as evidence of the position of his purchase, but
as evidence also of the several advantages and privileges
pertaining to the town and the lots, as indicated by the
plan, and especially as evidence of the localities, divis-
ions, and uses of its various parts as therein presented.
In purchasing and paying for his lot, he purchased and
paid for, as appurtenant to it, every advantage, privilege,
and easement which the plan represents as belonging to
it as a part, or to its owner as a citizen, of the town; and
the conveyance of each lot with a reference to the map,
or merely as a part of the town, was a conveyance of all
these appurtenances as ascertained by the map. These

conveyances, in connection with the map to which they refer, operate as a conclusive grant or covenant, securing to the purchasers and to the town all advantages, privileges, and easements to the lots of the said town.

The notoriety—actual as well as legal—of the acts involved in the making of Fulton's addition to Dover; the laying out of the same upon the land; the representation of it upon a map, open to public inspection, and recorded in the office of the recorder of deeds; the sale and conveyance of lots according to that plan; the record of the deed referring to the plan; the subsequent enclosure and improvement of some of them for business or residence; and the existence of the addition to the town of Dover upon the land,—must be considered as giving to the world such notice of the plan to which all these acts and facts have reference, as to preclude the possibility of afterwards acquiring from the original proprietor, or of asserting, or of claiming, with a good conscience, any right or interest inconsistent with those which, according to the plan of the addition thus made by him to the town, are appurtenant to the lots; and are therefore granted to or held for the lot owners or citizens and the local or general public.

The right acquired by a purchase of a lot in this addition to Dover is not confined to the mere use of the ground purchased, but extends to the use of all the streets, alleys, and other public rights in the town, according to their appropriate purpose.

These opinions in respect to the rights of purchasers of property on streets dedicated to public use by the owners of land over which they pass, and of the public therein, are expressed almost in the exact words of *Chief Justice* Marshall, of Kentucky, in the opinion delivered by him in the case of *Rowan* v. *Portland*. And they have been so expressed because it is difficult to improve upon the

language used by him, and because they are eminently applicable to the present case.

In my opinion, the town council of Dover had the right at any time after Fulton's addition was, by law, made a part of the town of Dover, and after Mr. Fulton so as aforesaid dedicated said streets to the use of the purchasers of lots on said streets, and to the public, to do whatever was necessary and proper for rendering them fit for travel, without taking any steps whatever toward the condemnation of the land over which they passed, under the Act for the incorporation of the town of Dover; and that therefore they might then, and may now, if anything is necessary for that purpose to be done to render Queen street, from Cecil street to Mary street, available to public travel, do whatever is so necessary, without reference to said Act of incorporation.

In respect to that portion of Mr. Fulton's land over which it is proposed to extend Queen street to Clara street, opposite the new county road, mentioned in the bill, and also in the resolution adopted by the town council, the case would be different. The land, over which Queen street is thus proposed to be extended has never been dedicated by Mr. Fulton to the purchasers of lots from him or to the public. Condemnation proceedings would be necessary under the Act for extending said Queen street over the land between Mary street and Clara street.

The proceedings taken by the town council heretofore for that purpose were not, in my opinion, sufficient, and were not in accordance with the Act from which they derive their authority.

The eighth section of that Act, as we have seen, declares that whenever the town council shall have determined to locate and lay out or widen any street, lane, or alley, and shall affix the compensation therefor, it shall be its duty,

immediately after the survey and location of the said street, lane, or alley, to notify in writing the owner or owners of the real estate through or over which such street, lane, or alley may run, of their determination to open and widen the same, and to furnish a general description of the location thereof, and also the amount of the damages or compensation allowed to each.

Now, a survey in all cases is not at all necessary, if by a survey be meant the employment of a surveyor and the actual measurement by him of the land to be condemned. It is indeed rarely that such a survey would be necessary. The persons authorized to make the condemnation may do so on their view of the premises. Generally in towns a very small distance and a very small space of land belonging to an individual is necessary to be condemned in opening a street.

Nowhere in the Act to incorporate the town of Dover is a plot required to be made. "To survey" has several significations. It may mean to inspect or take a view of; to view with attention; to view with a scrutinizing eye; to examine; to examine with reference to condition, situation, and value; to measure as land; and many others. "Survey" as a noun, as in the Act referred to, may mean an attentive or particular view; examination of the land with a design to ascertain the condition, quantity, or value. It certainly does not necessarily mean a paper containing a statement of the courses, distances, and quantity of land; and it does not necessarily mean a plot of land made by a surveyor as such. The Act would seem to contemplate that the survey and location of the street contemplated to be extended, laid out, or widened should be made before or at the time the damages were assessed, and not afterwards. And such seems to have been the view of the town council, if we are to judge from the notice which it gave to Mr. Fulton on the 26th

·day of March, 1886; for in that notice it says: " You are
hereby notified that the town council of the town of
Dover, at its regular meeting on the 7th day of Decem-
ber, 1885, did resolve to open Queen street from Cecil
street to Clara street, of the width of sixty feet, and
that they have condemned sixty feet front and 1,260 feet
·deep of land belonging to you; and that the said council
has allowed to you, as damages, the sum of six cents."

It is true this is a general description of the land, and
·all that the Act requires; but it is not so particular a de-
scription of it as that contained in the resolution adopted
by the council on the 7th day of December, 1885. It
was not on the 25th or 26th of March, 1886, that the
town council had determined to locate and lay out or ex-
tend Queen street and fix the compensation therefor, but
·it was on the 7th day of December, 1885, that it did
these things. And the Act of Assembly under which it
acted declared that it should be its duty, immediately
after doing these things, to notify in writing Fulton, the
owner of the real estate through which Queen street
should run, of its determination to open the same, and to
furnish a general description of the location thereof, and
the amount of damages or compensation allowed to him.

Now, the 26th of March, 1886, was not immediately
after the 7th day of December, 1885. And notice given
·on the former day was not the notice required to be
given by the Act of Assembly. The law sedulously pro-
tects a man's freehold. He cannot be deprived of it
·except in accordance with law. The question is not
what was in fact done between the 7th day of December,
1885, and the 26th of March, 1886, but what might have
been done.

A man shall not be deprived of the free use of his free-
hold except in strict accordance with law.

That this is the law in respect to that portion of the

land of Fulton, between Mary and Clara streets, which the town council, in mockery of justice, proposes to take for six cents, will be apparent on a moment's reflection.

The land is within the town limits of Dover. Between the seventh day of December, 1885,—the date of the condemnation,—and the twenty-sixth of March, 1886, Fulton, in absolute ignorance of the action of the town council, on the first-named day might have commenced, if not have completed, costly buildings and structures and other improvements on said piece of land. He might have expended money on the improvement of said piece of land, in the erection of buildings thereon in the period of time named, greater in amount than all his adjoining land of forty or fifty acres were intrinsically worth. And yet, if the contention of the counsel for the town council be correct, then it would have been competent for the town council, after the expenditure of these large sums of money, and at as late a period as March, 1886, to notify Fulton in writing of its determination to open the street across his land; and that it had, in the previous month of December, generously allowed him damages or compensation to the amount of six cents for so doing.

This is not the court to seek approval of action which might be attended with such consequences.

If the survey contemplated by the Act of Assembly is not held to have been made before or at the time of the condemnation of the land, and of the awarding of six cents damages, then no real survey ever was in fact made. No plot of a survey was required by the Act to be made. It is not pretended that the outside lines, including the strip of land, were in fact run or surveyed.

All that the surveyor is alleged to have done was to strike a line so as to determine the middle of Queen street as proposed to be extended to Clara street, or to

2

the new road which had been located on the opposite side to Clara street.

If the notice required to be given was not required to be given immediately in the sense here presented, then the town council might, at its pleasure, have given such notice at any time after the condemnation and before a pretended survey, however distant.

The survey might have been postponed, in this view of the case, for years; and Fulton, in the meantime, remain in uncertainty as to what the ultimate action of the council might be.

I am therefore of opinion, for this reason, that Queen street cannot be extended from Mary street to Clara street, under the proceedings had and taken by the town council as set forth in the paper in this cause.

I shall therefore decree that the preliminary injunction heretofore awarded in this cause, so far as it relates to Queen street, between Cecil street and Mary street, be dissolved; and that, so far as it relates to the land between Mary street and Clara street, it be made perpetual in respect to any proceedings by the town council heretofore taken and had to the same. And it is ordered that the corporation pay the costs in three months.*

*See same case on appeal to Court of Errors and Appeals reported in 11 Cent. Rep. 261.