**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 49231**

| | |
|---|---|
| TREASURE VALLEY HOME SOLUTIONS, LLC, an Idaho limited liability company, ) ) ) | |
| Plaintiff-Counterdefendant-Appellant, ) | Boise, November 2022 Term |
| ) | |
| v. ) | Opinion filed: February 14, 2023 |
| ) | |
| RICHARD E. CHASON, an individual, ) | Melanie Gagnepain, Clerk |
| ) | |
| Defendant-Counterclaimant-Respondent. ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Derrick O'Neill, District Judge.

The decision of the district court is <u>affirmed</u> in part and <u>reversed</u> in part.

Borton-Lakey Law & Policy, Meridian, for Appellant. Joseph W. Borton argued.

Sherer & Wynkoop, LLP, Meridian, for Respondent. Stephen T. Sherer argued.

_____

ZAHN, Justice.

This case concerns the enforceability of a Real Estate Purchase and Sale Agreement ("Agreement") between Treasure Valley Home Solutions, LLC, ("TVHS") and Richard Chason. TVHS filed a complaint against Chason alleging breach of contract and requesting specific performance of the contract after Chason refused to move forward with the transaction. Chason filed a motion for summary judgment, arguing the Agreement lacked definite terms and was therefore unenforceable. The district court granted Chason's motion for summary judgment after concluding the Agreement was a mere "agreement to agree." The district court also awarded Chason attorney fees pursuant to Idaho Code section 12-120(3). TVHS appeals both orders. We affirm the district court's grant of summary judgment, but reverse its award of attorney fees.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Treasure Valley Home Solutions, LLC, ("TVHS") is an Idaho limited liability company that buys and sells properties. Dan Walters is the registered agent, member, and manager of TVHS. On September 24, 2020, TVHS submitted an Agreement offering to purchase certain real property

1

and residential improvements from Richard Chason. The Agreement listed a purchase price of $330,000, payable as follows:

> a) By initial Deposit submitted herewith receipt of which is hereby acknowledged . . . $500
>
> . . .
>
> d) By Seller Terms Sheet . . . $55,000
>
> e) Balance to be paid by certified check or bank check at Closing . . . $274,500.

The Agreement also provided that the $500 deposit "shall be made at the stated times" and

> [i]n the event any deposit funds payable pursuant to this Agreement are not paid by Buyer, Seller may give written notice of such failure to Buyer. If such notice is given and a period of 3 (three) days pass without Buyer paying the Deposit owed. Seller may declare Buyer in default and shall have the remedies set forth in Paragraph 14.

The Agreement indicated that additional terms and conditions were attached. An attachment entitled "Additional Terms and Conditions," stated, in pertinent part:

> 5. Purchase price contingent upon Buyer and Seller mutually agreeing to seller financing terms in seller terms sheet on or before October 7, 2020.

A second attachment to the Agreement was entitled "Term Sheet," and stated, in pertinent part:

> ***Terms of this agreement to be set by Seller & Buyer on or before October 7, 2020****
>
> Preamble: This term sheet sets forth the proposed terms and conditions for a seller financed loan on [address] between Treasure Valley Home Solutions, LLC and Richard E. Chason (sic)

The purchase price section of the Term Sheet contained blanks for "purchase price," "down payment," "interest rate," "term," "payment," and "balloon." There were no numbers or amounts written in the blanks.

On September 25, 2020, Chason electronically signed the Agreement and emailed it to Walters. The following day Chason texted Walters:

> Dan I am opting out of your contract under paragraph 14 you have not paid me the $500 and so I'm entitled to rescind the agreement and refuse your offer to sell to you.

Two days later, on September 28, Walters deposited $500 into escrow with Pioneer Title Company. Walters subsequently attempted to perform an onsite inspection, but Chason refused to allow Walters to access to the property.

TVHS filed a complaint against Chason alleging breach of contract and requested a judgment ordering specific performance of the contract. After initiating the lawsuit, TVHS sent Chason three new letters seeking to buy the property. Chason filed an answer and counterclaim, alleging TVHS was in default by failing to make the required $500 deposit. Chason subsequently moved for summary judgment, arguing: (1) TVHS first breached the contract by failing to submit the $500 deposit, (2) the contract failed for indefiniteness and lacked necessary terms, (3) TVHS waived any rights it had to enforce the contract by not including the necessary information in the term sheet, and (4) TVHS's subsequent offers rescinded its first offer.

The district court held a hearing on the matter and granted Chason's motion for summary judgment. The district court rejected all of Chason's arguments except for Chason's contention that the Agreement lacked definiteness. The district court explained that the Agreement lacked reasonable certainty of material terms, because the $55,000 financed portion of the purchase price was not addressed. Specifically, the Agreement stated that $55,000 of the purchase price was payable "By Seller Terms Sheet." However, the district court explained that the term sheet "indicates that discussions concerning [the conditions and provisions of the $55,000] were ongoing and were to be set by Seller & Buyer on or before October 7, 2020." Accordingly, the district court found that there was no meeting of the minds "as to what the conditions and provisions were concerning the $55,000 of the term sheet, which clearly were intended to be a part of the sale of the property and a part of the agreement." The district court subsequently dismissed TVHS's claim with prejudice.

Chason filed a motion for attorney fees and costs pursuant to Idaho Code sections 12-120(3) and 12-121 and Idaho Rule of Civil Procedure 54. The district court concluded that the gravamen of the complaint was a commercial transaction and awarded Chason attorney fees in the amount of $6,225 and costs in the amount of $140.08 pursuant to Idaho Code section 12-120(3).

## II.     ISSUES ON APPEAL

1. Whether the district court erred when it granted Chason's motion for summary judgment?
2. Whether the district court erred when it granted Chason attorney fees pursuant to Idaho Code section 12-120(3)?
3. Whether either party is entitled to attorney fees on appeal?

## III.     STANDARD OF REVIEW

"The standard of review on appeal from an order granting summary judgment is the same standard that is used by the district court in ruling on the summary judgment motion." *Berglund v.*

*Dix*, 170 Idaho 378, ___ 511 P.3d 260, 266 (2022) (quoting *Hoke v. Neyada*, Inc., 161 Idaho 450, 453, 387 P.3d 118, 121 (2016)). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "A moving party must support its assertion by citing particular materials in the record or by showing the 'materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s].'" *Aizpitarte v. Minear*, 170 Idaho 186, 508 P.3d 1260, 1267 (2022) (quoting I.R.C.P. 56(c)(1)(B)). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Manning v. Micron Tech.*, Inc., 170 Idaho 8, 506 P.3d 244, 248 (2022) (quoting *Ware v. City of Kendrick*, 168 Idaho 795, 798, 487 P.3d 730, 733 (2021)). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Owen v. Smith*, 168 Idaho 633, 641, 485 P.3d 129, 137 (2021) (quoting *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 141, 456 P.3d 201, 210 (2019)). That said, a "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

## IV. ANALYSIS

### A. The district court did not err when it granted Chason's motion for summary judgment.

TVHS argues that summary judgment was not appropriate because "there are conflicting facts on the issue of whether Chason financing $55,000 was a material term of the [Agreement]," as is evidenced by Chason's and Walter's affidavits. TVHS contends that the district court improperly assessed the credibility of the affiants and weighed conflicting evidence in Chason's favor. However, TVHS points to Chason's text message to Walters, in which he referred to the Agreement as a "contract," as proof that there was a genuine issue of material fact regarding the existence and enforceability of the contract.

Chason argues that the district court properly granted summary judgment because the identity of the parties to the contract was not established because it appeared that Walters signed the Agreement in his personal capacity, not on behalf of TVHS. Additionally, Chason argues that "the material terms of the proposed contract were not established" because the Agreement lacked specific terms relating to financing the remaining $55,000.

4

Following a hearing on the motion, the district court granted summary judgment in Chason's favor after determining that the Agreement "lacks reasonable certainty as to a material term: namely, the conditions and provisions of the $55,000 of the term sheet." The district court found that "there was no meeting of the minds as to what the conditions and provisions were concerning the $55,000 of the term sheet, which clearly were intended to be a part of the sale of the property and a part of the agreement." The district court explained that since the Term Sheet indicated that discussions concerning the $55,000 would take place "on or before October 7, 2020[,]" the Agreement was merely an "agreement to agree." The district court noted that TVHS confirmed the Agreement was to further agree in its response to request for admission no. 1.

The purpose of contract interpretation "is to determine the intent of the contracting parties at the time the contract was entered. In determining the intent of the parties, this Court must view the contract as a whole." *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005) (quoting *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185–86, 75 P.3d 743, 746–47 (2003)). "An unambiguous contract will be given its plain meaning." *Id.*

The Agreement unambiguously stated that payment of $55,000 of the purchase price would be addressed in the attached Term Sheet. Further, the attached Additional Terms and Conditions unambiguously stated that the purchase price was contingent on TVHS and Chason agreeing to seller financed terms on or before October 7, 2020. The Term Sheet was blank yet stated it set forth the specific terms and conditions for a seller financed loan between TVHS and Chason. The Term sheet also indicated its terms would be set by TVHS and Chason on or before October 7, 2020. It is undisputed that the terms had not yet been negotiated or agreed upon at the time Chason rescinded his acceptance on September 26, 2020.

"No enforceable contract comes into being when parties leave a material term for future negotiations, creating a mere agreement to agree." *Brunobuilt, Inc. v. Strata, Inc.*, 166 Idaho 208, 217, 457 P.3d 860, 869 (2020) (quoting *Spokane Structures, Inc. v. Equitable Inv., LLC*, 148 Idaho 616, 621, 226 P.3d 1263, 1268 (2010)). A contingency is "dependent on something that might or might not happen in the future." *Contingent*, Black's Law Dictionary (11th ed. 2019). The plain and unambiguous language of the Agreement, including its attachments, demonstrates that the purchase price identified on the first page of the Agreement was not final, but instead was contingent on the parties reaching consensus on the terms of a seller-financed loan for $55,000 of the purchase price. As a result, the Agreement was not yet a binding contract, but rather an

agreement to agree. Because the parties had not reached consensus on the seller-financed loan, there was never a meeting of the minds between the parties as to the purchase price. Without a purchase price, the Agreement is unenforceable. *P.O. Ventures, Inc. v. Loucks Fam. Irrevocable Tr.*, 144 Idaho 233, 238, 159 P.3d 870, 875 (2007) (citation omitted) ("For a land sale contract to be specifically enforced, the contract must typically contain the minimum provisions of the parties involved, the subject matter thereof, the price or consideration, a description of the property, and all the essential terms of the agreement.").

Finally, TVHS argues that Chason's use of the word "contract" in the parties' text messages amounts to a legal admission that there was a binding contract. However, Chason is a layperson and we will not take his language out of context to interpret it as a concession that the "contract" was complete. It is quite common for people, including attorneys, to refer to a draft of an unsigned agreement as "the contract." Chason's mere use of the word contract does not make an unenforceable contract enforceable.

In sum, inasmuch as the parties never agreed on those terms, the Agreement was merely an agreement to agree. Accordingly, we hold that the contract was unenforceable and the district court did not err when it granted summary judgment in favor of Chason. Because we affirm the district court's grant of summary judgment on this basis, we need not address Chason's remaining arguments in support of the district court's grant of summary judgment.

**B. The district court erred in awarding Chason attorney fees.**

1. <u>The district court erred in awarding Chason attorney fees pursuant to Idaho Code section 12-120(3).</u>

TVHS argues that the district court erred in awarding attorney fees under Idaho Code section 12-120(3) because the Agreement was not a commercial transaction, but rather a personal one, because the real property was Chason's personal residence. Chason argues that the district court appropriately awarded attorney fees under Idaho Code section 12-120(3) because the sale of real estate is not a personal transaction and, thus, it is a commercial transaction for purposes of section 12-120(3). Further, Chason maintains that he is entitled to attorney fees under the Agreement.

The district court awarded attorney fees pursuant to Idaho Code section 12-120(3) after determining the purpose of the Agreement was to purchase real property for commercial development. The district court explained that "the gravamen of the complaint was for breach of

contract, and the litigation of a contract to purchase real property for the purposes of that commercial development by [TVHS] was a commercial transaction."

"The awarding of attorney fees and costs is within the discretion of the district court and is subject to the abuse of discretion standard of review." *Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc.*, 170 Idaho 649, ___, 516 P.3d 73, 86 (2022) (citing *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 140, 357 P.3d 863, 865 (2015)). "The burden is on the party opposing the award to demonstrate that the district court abused its discretion." *Lettunich v. Lettunich*, 145 Idaho 746, 749, 185 P.3d 258, 261 (2008) (quoting *Eastern Idaho Agricultural Credit Ass'n v. Neibaur,* 133 Idaho 402, 412, 987 P.2d 314, 324 (1999)). To determine whether the district court abused its discretion in awarding attorney fees, this Court must assess whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Berglund v. Dix*, 170 Idaho 378, ___ 511 P.3d 260, 266 (2022) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)). However, "[w]hether a district court has correctly determined that a case is based on a commercial transaction for the purpose of I.C. § 12-120(3) is a question of law over which this Court exercises free review." *Garner v. Povey*, 151 Idaho 462, 469, 259 P.3d 608, 615 (2011).

Idaho Code section 12-120(3) "allows for an award of attorney fees to a prevailing party in a civil action to recover on any commercial transaction." *Buku Properties, LLC v. Clark*, 153 Idaho 828, 836, 291 P.3d 1027, 1035 (2012) (citing *Garner*, 151 Idaho at 469, 259 P.3d at 615). To recover attorney fees under Idaho Code section 12-120(3), the gravamen of the claim must involve a commercial transaction. *Breckenridge Prop. Fund 2016, LLC*, 170 Idaho at ___, 516 P.3d at 87. Courts determine whether the gravamen of a claim is a commercial transaction by analyzing whether: (1) there is a commercial transaction that is integral to the claim; and (2) the commercial transaction is the basis upon which recovery is sought. *Id.* (quoting *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 136 Idaho 466, 471, 36 P.3d 218, 223 (2001)). "The term 'commercial transaction' is defined to mean all transactions except transactions for personal or household purposes. The term 'party' is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof." I.C. § 12-120(3). "For a commercial transaction to be present for the purposes for [sic] I.C. § 12-120(3)

'each party to the transaction must enter the transaction for a commercial purpose.'" *Buku Properties, LLC*, 153 Idaho at 836, 291 P.3d at 1035 (quoting *Carrillo v. Boise Tire Co.*, Inc., 152 Idaho 741, 756, 274 P.3d 1256, 1271 (2012)). Notably, "a mere request for attorney fees pursuant to I.C. § 12-120(3), without more, is not sufficient to trigger the commercial transaction prong of that section." *Id.* at ___, 516 P.3d at 87 (emphasis removed).

In its decision awarding attorney fees, the district court stated, "the gravamen of the complaint was for breach of contract, and the litigation of a contract to purchase real property for the purposes of that commercial development by [TVHS] was a commercial transaction." However, the record does not support the conclusion that the transaction itself was commercial, or that either party had a commercial purpose for entering into the transaction. Neither of the parties' pleadings alleged the parties entered into a commercial transaction. Additionally, Chason submitted no evidence that the property was to be used for a commercial purpose. He merely asserted that the purchase of real property is a commercial transaction.

This Court has held that "the conveyance of real property *may* constitute a commercial transaction." *Brown v. Greenheart*, 157 Idaho 156, 167, 335 P.3d 1, 12 (2014) (emphasis added, citation omitted). In *Brown*, this Court affirmed an award of attorney fees pursuant to Idaho Code section 12-120(3) when the conveyance of real property included a parcel of grazing land with no residential property. *Id.* at 168, 335 P.3d at 13. Other cases confirm this notion that the conveyance of real property may constitute a commercial transaction when there was a commercial element to the property. *See Watson v. Watson*, 144 Idaho 214, 216, 159 P.3d 851, 853 (2007) (holding the sale of a property was a commercial transaction where the land was used for both a family retreat and logging); *Herrick v. Leuzinger*, 127 Idaho 293, 306, 900 P.2d 201, 214 (Ct. App. 1995) (holding that the lease of real property was a commercial transaction where the property included a residence as well as land used for commercial ranching). Additionally, the parties must have mutuality of commercial purpose to constitute a commercial transaction for purposes of section 12-120(3). *See Buku Properties, LLC*, 153 Idaho at 836, 291 P.3d at 1035.

In reaching its decision in this case the district court relied on *Heritage Excavation, Inc. v. Briscoe*, 141 Idaho 40, 105 P.3d 700 (Ct. App. 2005). In *Heritage Excavation, Inc.*, the Court of Appeals awarded attorney fees on appeal pursuant to Idaho Code section 12-120(3) after finding the contract involved a commercial transaction because both parties intended to develop the land. *Id.* at 44, 105 P.3d at 704. That said, the Court of Appeals did not analyze whether each party to

the transaction had a commercial purpose. *Id.* The Court of Appeals did, however, note that the defendant who originally owned the property was interested in eventually selling or developing the property for a subdivision. *Id.* at 42, 105 P.3d at 702. The plaintiff was a development company. *Id.* We can infer from these facts that both parties to the transaction shared a mutuality of commercial purpose.

The record in this case contains no evidence establishing that the real property at issue had a commercial element. To the contrary, the record establishes that the real property was Chason's personal residence. We have held that section 12-120(3) does not apply to the purchase of real property for personal use because the "transaction lacks the required symmetry of commercial purpose[.]" *Goodspeed v. Shippen*, 154 Idaho 866, 874, 303 P.3d 225, 233 (2013). Chason has provided no evidence here to establish a symmetry of commercial purpose in the sale his personal residence. We decline his invitation to hold that the sale of real property always constitutes a commercial transaction.

The district court failed to act consistently with the legal standards applicable to the specific choices before it. The district court did not cite evidence in the record establishing that there was a commercial element to the real property or establishing a mutuality of commercial purpose between TVHS and Chason. For this reason, this case is distinguishable from *Heritage Excavation*. Therefore, we hold that the district court erred in awarding Chason attorney fees under Idaho Code section 12-120(3).

2. <u>The district court did not err when it determined Chason was not entitled to attorney fees pursuant to the Agreement.</u>

Next Chason argues that, in the event the Court determines the district court erred in awarding attorney fees under Idaho Code section 12-120(3), the Court should determine that the district court erred in failing to award attorney fees under the terms of the Agreement. Chason maintains that the district court's failure to award attorney fees under the Agreement is a violation of public policy because only allowing the recovery of fees for enforceable contracts means TVHS is the only party with the potential to receive fees. The district court determined that Chason could not seek to enforce the attorney fees provision of the Agreement after arguing the Agreement is an unenforceable contract.

"[P]arties generally cannot benefit from a contractual attorney fees provision" where the contract is "deemed never to have existed in the eyes of the law." *Wadsworth Reese, PLLC v.*

9

*Siddoway & Co.*, PC, 165 Idaho 364, 369, 445 P.3d 1090, 1095 (2019) (internal quotations and citations omitted). We have determined that the parties entered into "an agreement to agree" rather than a legally binding contract. Therefore, Chason cannot seek to enforce a contract that was never formed in the first place. Further, Chason fails to support his contention with any legal authority recognizing the public policy he urges us to apply here. Accordingly, the district court did not err in denying Chason's request for attorney fees pursuant to the Agreement.

**C. We do not award either party attorney fees on appeal.**

TVHS argues it is entitled to attorney fees on appeal pursuant to Idaho Code section 12-121. Idaho Code section 12-121 allows a court to "award reasonable attorney's fees to the prevailing party" if "the case was brought, pursued or defended frivolously, unreasonably or without foundation." TVHS did not prevail on one of its claims and, therefore, is not a prevailing party entitled to attorney fees.

Chason argues that he is entitled to attorney fees on appeal pursuant to Idaho Code section 12-120(3) and section 14 of the Agreement. For the reasons stated previously, we decline to award Chason attorney fees on appeal under either section 12-120(3) or the Agreement.

## V. CONCLUSION

The decision of the district court is affirmed in part and reversed in part. The district court did not err when it granted Chason's motion for summary judgment because a valid contract was never formed between the parties. However, the district court erred when it awarded Chason attorney fees pursuant to Idaho Code section 12-120(3) because the evidence did not establish that a commercial transaction was the gravamen of the claim between TVHS and Chason. Neither party is awarded attorney fees or costs on appeal.

Chief Justice BEVAN, Justices BRODY, STEGNER and MOELLER CONCUR.